UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YVETTE SADIGH, individually and on behalf of all others similarly situated, | Case No. 22-cv-298 |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, ALLIED INTERSTATE, LLC, and IQOR HOLDINGS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Yvette Sadigh, ("Plaintiff"), by her undersigned counsel, on behalf of herself and all others similarly situated, complaining of defendants Educational Credit Management Corporation ("ECMC"), Allied Interstate, LLC ("Allied"), and Iqor Holdings, Inc. ("Iqor") (ECMC, Allied, and Iqor, are, collectively, "Defendants"), alleges based upon information and belief as follows:

**PRELIMINARY STATEMENT**

1.      This is a class action against Defendants for declaratory judgment, violations of New York General Business Law § 349, violations of the Fair Debt Collection Practices Act ("FDCPA"), unjust enrichment, and conversion.

2.      Defendant ECMC is a "guaranty agency" for the United States Department of Education, which services defaulted Federal Family Education Loan Program ("FFELP") student loans and attempts to collect on the defaulted debt. Defendant Iqor and its subsidiary Defendant Allied regularly act as debt collectors for ECMC.

3.      Defendants engage in egregiously misleading practices in the course of servicing and attempting to collect on defaulted FFELP student loans that causes student loan borrowers

debt to become wrongfully inflated in violation of applicable law. Defendants' scheme consists of:

    a. Misleading student loan borrowers by charging them a higher rate of interest than what is permitted by FFELP;

    b. Misleading student loan borrowers by charging them for collection costs over and above the limitations set by FFELP; and

    c. Enforcing/claiming the enforceability of purported judgments, with capitalized interest and fees, that appear to be facially unenforceable because they are unintelligible, decades old, and may not be currently docketed.

4. As a result of Defendants' deceptive and wrongful practices, student loan borrowers suffer for much of their adult lives from improperly inflated loan debt and from harassment by debt collectors because they are compelled by Defendants to pay these illegally inflated amounts.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

6. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 15 U.S.C. § 1692 *et seq*.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district, a substantial portion of Defendants' business is conducted in this district, and Defendants have sufficient minimum contacts with this district, and otherwise purposely avail themselves of the markets in this district

through the use of the mail, telephone and email to engage in promotion, sale, and marketing of services in this district. In addition, Plaintiff resides in this judicial district.

## PARTIES

8. Plaintiff Yvette Sadigh is a resident of Kings County, New York.

9. Defendant Educational Credit Management Corporation ("ECMC") is a Minnesota corporation. ECMC is not registered to do business in the State of New York, neither as a debt collection agency, as a student loan servicer, nor as a foreign corporation. ECMC regularly communicated by telephone and email with Plaintiff, in New York State, and regularly employs and directs debt collectors, Iqor and its subsidiary, Allied, to facilitate its student loan collection business.

10. Defendant Iqor is a Florida corporation. Iqor is registered to do business in the State of New York. Iqor regularly communicated by telephone and email with Plaintiff, in New York State. For example, Plaintiff received documents on multiple occasions, purportedly from Allied, from the email addresses documents@iQor.com and Documents1@iqor.com. It was explained to Plaintiff's counsel at the time – by Iqor employees on ECMC/Allied phone numbers – that an iQor.com email address was used because due to short staffing Iqor personnel were working on behalf of ECMC and Allied. In addition, Plaintiff, through counsel, in August 2021 had a phone call with Brendan Lee, of Iqor, regarding the unenforceability of the Judgment (defined below). In this conversation Mr. Lee represented that the Judgment was enforceable and would be enforced. According to LinkedIn, Brendan Lee is "SVP - Chief Litigation Counsel and Chief Compliance Officer at iQor."

11. Defendant Allied is a Minnesota limited liability company. Allied is registered to do business in the State of New York as a foreign corporation and debt collection agency. Allied

is a wholly-owned subsidiary of Iqor, which is a business outsourcing company that holds itself out to the public as a debt collection consulting firm. Allied regularly communicated by telephone and email with Plaintiff, in New York State.

## PROCEDURAL BACKGROUND

12. On December 16, 2021, Plaintiff commenced this action by filing a summons with notice in the Supreme Court of the State of New York, County of Kings, Index No. 532236/2021. *See* Dkt. No. 1-1.

13. On January 19, 2022, Defendants removed this action to this Court. *See* Dkt. No. 1.

14. On February 7, 2022, Plaintiff filed the original complaint. *See* Dkt. No. 10.

## STATEMENT OF FACTS

15. In the early 1980s, Plaintiff obtained three student loans under the Guaranteed Student Loan Program ("GSLP") to help pay for her to attend New Rochelle College. In connection with the loans, Plaintiff signed three promissory notes, in 1982, 1983 and 1984 (the "Loans"). The initial balance on the Loans that Plaintiff received was approximately $8,000.

16. In 1986, the applicable rate of interest for GSLP loans was fixed at 8%. *See* 20 U.S.C. § 1077a(a) and (b). In 1992 GSLP was renamed the "Federal Family Education Loan Program" ("FFELP"). In 2009, all FFELP borrowers became subject to the terms of the Stafford Loan Program ("SLP") but former GSLP loan interest rates remained those established under the GSLP interest rate formula from the 1980s.

17. The Loans were originated in 1982, 1983 and 1984 under GSLP.

18. Defendants assert that Plaintiff defaulted on the Loans in 1985 and interest and fees that accrued until then were capitalized into the principal of the loan. They further assert that that in 1988 a default judgment (the "Judgment") was entered against Plaintiff and interest and fees were again capitalized into the principal of the loan.

19. In a letter, dated August 2, 2021, from Allied to Plaintiff sent from the email address Documents1@iqor.com (the "August 2 Letter"), Defendants provided Plaintiff with a purported scan of a photocopy of the Judgment, which is attached as Exhibit A.

20. The Judgment is unintelligible. The Judgment paper propounded by Defendants does not have a docket number, an index number, or the issuing court. It contains references to three separate counties. The dollar amounts listed on the Judgment, including the total amount of the Judgment, are so faded that they cannot be read.

21. The Defendants are unwilling or unable to provide any form or reference to show that the purported Judgment they seek to enforce conforms to New York State Civil Practice Law and Rules Article 50, pertaining to civil money judgments.

22. In a letter dated August 9, 2021 ("August 9 Letter"), ECMC represented to the Plaintiff and her attorney that the purported copy of the Judgment, "is the best copy available and can be used in a court of law." A copy of this letter is attached as Exhibit B.

23. Plaintiff did not receive notice of the purported Judgment until August 2, 2021. To be enforceable in other courts the judgment must be in the form of a certified copy from the clerk of the issuing court. *See, e.g.*, 20 U.S.C. § 1091a(c) (requiring a certified copy of a state court judgment and a copy of the assignment or transfer).

24. Upon information and belief, in or around November 2009, the Loans were placed with ECMC for the purpose of collection. ECMC specializes in debt collection of defaulted

student loans in bankruptcy, and it regularly subcontracts its pre-bankruptcy work to Iqor and Allied for a percentage of the amounts recovered.

25. Before she saw the alleged judgment in August 2021, Plaintiff, through counsel, disputed the Amount Claimed (defined below) with Defendants as false because it was based upon an incorrect interest rate and excessive collection costs.

26. Defendants claim that as of August 9, 2021, Plaintiff owes $41,962.14 ("Amount Claimed"). Putting aside questions of the validity of the Judgment, this Amount Claimed is materially inflated in violation of applicable statutes.

27. First, Defendants not only seek to recoup costs of collection based upon the entire combined outstanding principal and interest of Plaintiffs debt, but Defendants' collection costs are based on an arbitrary cost basis in contravention of federal law. *See* 20 U.S.C. § 1091a(b).

28. Second, Defendants are applying a 9% interest rate to the Loans, despite the fact that federal law caps the interest rate at 8%. *See* 20 U.S.C.A. § 1077a.

29. Despite Plaintiff's protests, Defendants continue to validate the Amount Claimed (or an amount materially similar), for example:

    a. In an email sent from documents@iqor.com on December 17, 2020 purportedly from Allied, Defendants transmitted (i) a Borrower Transaction History Report from ECMC showing a principal balance of $10,748.25, an interest balance of $22,484.08, collection costs of $7,872.80, and a total balance of $41,105.13, (ii) a letter from Allied to Plaintiff, dated July 11, 2019, showing the "amount due" as $40,152.81, and (iii) a letter from Allied to Plaintiff, dated March 26, 2017, showing the "amount due" as $37,462,24;

b. In an email sent from Documents1@iqor.com on June 9, 2021 purportedly from Allied, Defendants transmitted a letter from Allied to Plaintiff, dated June 9, 2021, showing the "amount due" as $41,803.23, enclosed with the letter were documents purporting to be the promissory notes for the Loans and a Borrower Transaction History Report from ECMC showing a principal balance of $10,748.25, an interest balance of $22,944.91, collection costs of $8,107.44, and a total balance of $41,800.60;

c. In an email sent from ecmccustomerservice@ecmc.org on June 16, 2021 from ECMC, Defendants transmitted (i) a Borrower Transaction History Report from ECMC showing a principal balance of $10,748.25, an interest balance of $22,963.44, collection costs of $8,107.44, and a total balance of $41,819.13, (ii) a Collection Transaction History Report for Loan #1 showing a principal balance of $4,030.61, an interest balance of $8,611.52, collection costs of $3,040.35, and a total balance of $15,682.48, (iii) a Collection Transaction History Report for Loan #2 showing a principal balance of $3,358.82, an interest balance of $7,175.85, collection costs of $2,533.52, and a total balance of $13,068.19, (iv) a Collection Transaction History Report for Loan #3 showing a principal balance of $3,358.82, an interest balance of $7,175.85, collection costs of $2,533.52, and a total balance of $13,068.19, and (v) a borrower snapshot print screen for Plaintiff, printed on June 16, 2021, showing, among other things, the "original guarantor" of the Loans as New York Higher Education Services (a copy of this snapshot is attached as Exhibit C);

    d.  In the August 2 Letter where Defendants provide Plaintiff with an alleged copy of the illegible and unintelligible Judgment and listed the "amount due" as $41,946.27; and

    e.  In the August 9 Letter.

30.    Defendants assert that the interest rate is valid since Plaintiff's promissory notes provide for a 9% interest rate and that the New York statutory interest rate on judgments is 9%.

31.    Defendants assert that the 24.92% charged of Plaintiff's total balance is the industry standard for collection costs that Defendants impose on all borrowers under a uniform "special formula," which Defendants have not disclosed.

32.    Defendants are incorrect concerning the Amount Claimed because:

    a.  Plaintiff has been unable to locate a money judgment currently docketed against her, nor is there any index number concerning such judgment pertaining to the Loans. The Judgment bears a stamp purportedly representing that it was filed with the New York County Civil Court. But the New York County Civil Court claims to have destroyed older handwritten judgment records and other documents from the same time period as the alleged Judgment, the 1980s.[1] Thus, to the extent there ever was a judgment against Plaintiff concerning her Loans, or any borrower over 25 years ago, there may be no records establishing an enforceable judgment now.

    b.  GSLP loans obtained after January 1981 are variable rate loans capped at 8% if the applicable treasury bill is below 9%. *See* 20 U.S.C. § 1077a(b). The stated interest

---

[1] *See* https://www.nycourts.gov/courts/nyc/civil/creditreports.shtml ("Records are retained by Civil Court for 25 years…")

rate in the Notes is not applicable.  At all times since 1984, the treasury rate has been below 8% making the applicable interest rate 8%.[2]

    c. FFELP caps "reasonable collection costs" at the lesser of reasonable collection activity expenses incurred that are enumerated in 34 C.F.R. § 682.202  or 16% of the principal and interest on payments made while a FFELP loan is in default.  For example, 34 C.F.R. § 682.405(b)(vi)(B) of the FFELP regulations provides for the imposition of collection costs for enumerated expenses listed in 34  C.F.R. § 30.60, not to exceed 16% of the principal and interest of a defaulted FFELP loan after successful rehabilitation into current repayment status.  34 C.F.R. 682.410(b)(2)(iii)(B) provides that guaranty agencies can only impose an amount of collection costs equal to or less than what the Department of Education can impose, which is no more than 16%.   Defendants are charging Plaintiff and others like her, 24.92% of the total combined interest and principal as collection costs in violation of the law.

    d. Defendants incorrectly indicate that the amount of the collection costs section of its borrower transaction history reports is the actual amount owing and due at the time when the transaction history reports are sent. That is not the case, a borrower can avoid paying or reduce any collection costs if he/she simply exits default through making payment of nine qualifying affordable payments through a loan rehabilitation program, but if the borrower does not make all the payments and does not immediately cure her default, or at most the borrower will have to pay 16% on her rehabilitated defaulted loan, pursuant to applicable federal regulations.

---

[2] Additionally, the preamble for 20 U.S.C. § 1077a(a) "Rates to be consistent for borrower's entire debt" were not added until 1986, implicating a fixed interest rate of 8% for all GSLP borrowers who started their education after January 1981.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings the Second, Third, Fourth, and Fifth Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class (i) consisting of all borrowers of student loans that originated before July 1, 1988 under GSLP for which Defendants applied an interest rate greater than 8% after 1984; (ii) for which defendants over charged the borrowers collection costs; or (iii) otherwise misrepresented the amount owed (the "Class").

34. Plaintiff brings the First Claim for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all borrowers of student loans for which Defendants claim a judgment was entered against in the State of New York, which is not presently enforceable (and potentially never was enforceable) (the "Judgment Sub-Class").

35. Plaintiff reserves the right to modify or amend the Classes as appropriate.

36. The members of the Classes are so numerous that joinder of all members is impracticable. Although the exact number of members of the Classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the Classes.

37. Common questions of law and fact exist to all members of the Classes, and predominate over any questions solely affecting individual members. Among the questions of law and fact common to the Classes are:

(a) Whether the Defendants overcharged Plaintiff, and others similarly situated, interest;

(b) Whether Defendants can enforce a supposed New York money judgment that is unintelligible, has no identifying index number, and is not docketed;

(c) Whether the Defendants overcharged Plaintiff, and others similarly situated, and misrepresented their rights as student loan borrowers regarding collection costs and associated fees;

(d) Whether the Defendants purposefully misrepresented the amounts Plaintiff, and others similarly situated, actually owed;

(e) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution;

(f) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief;

(g) Whether Defendants' conduct violated New York General Business Law § 349;

(h) Whether Defendants' conduct violated the Fair Debt Collection Practices Act, 15. U.S.C. § 1692 *et seq.*;

(i) Whether Defendants were unjustly enriched; and

(j) Whether Defendants committed conversion;

38. Plaintiff's claims are typical of the claims of the members of the Classes, as Plaintiff and the other members of the Classes sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

39. Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Classes.

40. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Classes is impracticable. Furthermore, since the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the Classes to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment on behalf of Plaintiff and the Judgment Sub-Class against all Defendants)

41. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

42. An actual controversy exists as to whether Defendants may seek to enforce supposed judgments against borrowers of student loans for which Defendants claim a judgment was entered against in the State of New York over 25 years ago, which is unintelligible and may not be currently docketed ("Supposed Judgments").

43. Plaintiff and the Judgment Sub-Class are entitled to declaratory judgment that the Supposed Judgments are unenforceable.

## SECOND CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf of Plaintiff and the Class against all Defendants)

44. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

45. Plaintiff and the other members of the Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

12

46.     Defendants engaged in acts and practices in the State of New York that were deceptive or misleading in a material way, which injured Plaintiff and the other members of the Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

47.     Defendants' deceptive acts include, but are not limited to, (a) charging the incorrect interest rate; (b) representing there are judgments against borrowers when those judgment are unintelligible and may not be currently docketed; (c) over charging collection costs; and (d) misrepresenting the amount owed.

48.     Plaintiff and the other members of the Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual, or, alternatively, statutory, damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

49.     Plaintiff and the other members of the Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

50.     Plaintiff and the other members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

## THIRD CLAIM FOR RELIEF

### (Violation of the Fair Debt Collection Practices Act, 15. U.S.C. § 1692 *et seq.* on behalf of Plaintiff and the Class against all Defendants)

51.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

52.     Defendants violated 15 U.S.C. § 1692e and 1692f of the FDCPA by using any false, deceptive or misleading representation or means in connection with their attempts to collect debts from Plaintiff and the Class.

53. Defendants violated 15 U.S.C. § 1692e and 1692f of the FDCPA in connection with Plaintiff and the Class.

54. By (a) charging the incorrect interest rate; (b) representing there are judgments against borrowers when those judgment are unintelligible and may not be currently docketed; (c) over charging collection costs; and (d) misrepresenting the amount owed, Defendants engaged in a false, deceptive or misleading representation or means in connection with the collection of the debt.

55. Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

56. Defendants each violated Section 1692e(10) by misrepresenting the permissible charges that may be imposed to Plaintiff, and others like her, vis-a-vis the applicable rate of interest, the permissible collection costs and fees it may impose.

57. Defendants each violated Section 1692e(10) by misrepresenting the facts and circumstances of her obligation, to Plaintiff and others like her, in providing scanned photocopies of purported judgments that are not enforceable.

58. Section 1692f prohibits the use unfair or unconscionable means to collect or attempt to collect any debt.

59. Defendants each violated Section 1692f in responding to reasonable requests by Plaintiff and others like her, to cease collection of illegally inflated amounts of their debts and to cease applying judgment amounts to their accounts with threats to continue collections by any means necessary.

60. The acts and practices herein set forth were deceptive, misleading, and fraudulent. Plaintiff and the Class have been damaged as a result of these violations—including both

economic and noneconomic damages—and are entitled to relief as provided for by 15 U.S.C. § 1692k.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment on behalf of Plaintiff and the Class against all Defendants)

61. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

62. As detailed above, Plaintiff and the other members of the Class have conferred a benefit upon Defendants, specifically the principal, interest, and fees Defendants earns from collecting Plaintiff and the other members of the Class's student loans to which it would not otherwise have been entitled.

63. Defendants' retention of the money they received by inflating student loan balances and thereby continuing to profit is an unjust enrichment and violates equity and good conscience.

64. As a result of Defendants' unjust enrichment, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Conversion on behalf of Plaintiff and the Class against all Defendants)

65. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

66. Through deception, Defendants took possession of Plaintiff's and Class Members' federal tax refund, to which they had no right and kept it, thus interfering with her right of possession.

67. For example, in 2019, Defendants falsely certified that Plaintiff owed a higher amount of money than she owes, was in default, and had a judgment against her, and used the

false information to calculate the amount that served as the basis from which Plaintiff's IRS tax refund was offset.

68.     Plaintiff, and others similarly situated, were and continue to be damaged by Defendants' collective conduct of seizing their money using federal tax refund offsets, wage garnishments, or other methods of execution that Defendants are not entitled to.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the Class prays for judgment as follows:

(a)   Certifying the proposed Classes pursuant to Fed. R. Civ. P. 23;

(b)   Designating Plaintiff as representative of the proposed Classes and designating Plaintiff's counsel as counsel for the Classes;

(c)   Awarding Plaintiff and the other members of the Classes compensatory and/or statutory damages for the wrongful acts alleged;

(d)   Awarding Plaintiff and the other members of the Classed treble damages for Defendants' violations of GBL § 349;

(e)   Awarding Plaintiff and the other members of the Classes punitive damages;

(f)   Awarding Plaintiff and the other members of the Classes the declaratory relief sought;

(g)   Enjoining Defendants from continuing the wrongful acts and practices alleged;

(h)   Awarding Plaintiff and the other members of the Classes the costs of the suit and attorneys' fees;

(i)   Awarding Plaintiff and the other members of the Classes pre and post-judgment interest at the maximum legal rate; and

(j)     Awarding Plaintiff and the other members of the Classes such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: August 12, 2022

                      **MOORE KUEHN, PLLC**

                      */s/Justin Kuehn*
                      Justin A. Kuehn
                      Marshall A. Wexler
                      30 Wall Street, 8th floor
                      New York, New York 10005
                      Tel: (212) 709-8245
                      jkuehn@moorekuehn.com
                      mwexler@moorekuehn.com
                              -and-
                      Lawrence P. Eagel
                      **BRAGAR EAGEL & SQUIRE, P.C.**
                      810 Seventh Avenue, Suite 620
                      New York, New York 10019
                      Tel: (212) 308-5858
                      eagel@bespc.com

                      *Attorneys for Plaintiff and the Classes*