UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
YVETTE SADIGH,

Plaintiff,

-against-

EDUCATIONAL CREDIT MANAGEMENT CORPORATION, ALLIED INTERSTATE, LLC, and IQOR US, INC.,

Defendants.

-----------------------------------------------------------x

MEMORANDUM AND ORDER

No. 22-CV-298-JRC

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Yvette Sadigh ("plaintiff" or "Sadigh") brings this putative class action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York's General Business Law ("GBL") section 349 against defendants Educational Credit Management Corporation ("ECMC"), Allied Interstate, LLC ("Allied") and iQor US, Inc. ("iQor") (Allied and iQor are referred to as the "Allied defendants" and ECMC and the Allied defendants are referred to as "defendants"), regarding defendants' attempts to collect unpaid student loans. *See* Am. Compl., Dkt. 21.

Currently pending before this Court are motions for summary judgment filed by defendants ECMC, Allied and iQor. *See* Dkts. 73, 78. For the reasons described below, this Court denies in part without prejudice and grants in part defendants' motions for summary judgment.

## Factual Background

The Court describes the relevant factual background below from the statements submitted

by the parties pursuant to Local Civil Rule 56.1,[1] and the relevant evidence in the record. The facts described below are undisputed unless otherwise noted. Local Civil Rule 56.1 "deems admitted each numbered paragraph in [a] statement of material facts" that is not specifically controverted in an opposing Local Rule 56.1 statement. *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (quotation marks omitted); *see also* Local Civil Rule 56.1(c). However, "the Court will not consider assertions for which no citations to record are provided . . . that are merely legal arguments, . . . or [that are] directly contradicted by or not patent from evidence in the record." *Sanders v. City of New York*, No. 16-CV-6526, 2021 WL 4395219, at *3 n.8 (E.D.N.Y. June 15, 2021), *report and recommendation adopted*, 2021 WL 4350487 (E.D.N.Y. Sept. 24, 2021).

ECMC was created under the direction of the United States Department of Education ("DOE") to provide specialized guarantor services pursuant to the Federal Family Education Loan Program ("FFELP"). ECMC 56.1 Stmt. ¶ 2; Allied 56.1 Stmt. ¶ 3. ECMC has an agreement with the Department of Education to operate as a "guaranty agency" participating in the FFELP. ECMC 56.1 Stmt. ¶ 4; Allied 56.1 Stmt. ¶ 3. Pursuant to federal regulation, such guaranty agencies are required to fulfill certain fiduciary obligations, including "engag[ing] in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender." Declaration of Kerry Klisch ("Klisch Decl.") ¶ 6, Dkt. 78-1 (quoting 34 C.F.R. § 682.410(b)(6)(i)); ECMC 56.1 Stmt. ¶¶ 8-9; Allied 56.1 Stmt. ¶ 4. Guaranty agencies initiate tax refund offsets through certifying a borrower's liability to the United States Treasury, which then performs the actual offset and retains offset funds. ECMC 56.1 Stmt. ¶¶ 10-11. ECMC has

[1] ECMC and the Allied defendants each filed a 56.1 Statement of Undisputed Material Facts. *See* Allied 56.1 Stmt., Dkt. 73-2; ECMC 56.1 Stmt., Dkt. 78-2. Plaintiff filed a response to each 56.1 statement. *See* Pl.'s Allied 56.1 Opp., Dkt. 81-1; Pl.'s ECMC 56.1 Opp., Dkt. 83-1.

not received any money from tax refund offsets from plaintiff. *Id.* ¶¶ 10-12. Administrative Wage Garnishment is another collection mechanism provided for by federal regulation. *Id.* ¶ 13. ECMC did not receive any direct payments via garnishment from plaintiff or her employer. *Id.*

Allied is a third-party account receivables agency that is retained to assist in the collection of debt obligations. Allied 56.1 Stmt. ¶ 5. Allied is a wholly-owned subsidiary of defendant iQor US, Inc. *Id.* ¶ 6.

Plaintiff obtained three Stafford loans under the FFELP to finance her education at the College of New Rochelle: a loan in the original amount of $3,000, made on November 18, 1981, and disbursed on January 14, 1982; a loan in the original amount of $2,500, made on December 12, 1982, and disbursed on January 19, 1983; and a loan in the original amount of $2,500, made on January 24, 1984, and disbursed on March 2, 1984 (collectively, the "Loans"). ECMC 56.1 Stmt. ¶¶ 15-16; Allied 56.1 Stmt. ¶ 7; *see* Am. Compl. ¶¶ 15, 17. The original lender of the Loans was Jamaica Savings Bank and the original guarantor was the New York State Higher Education Services Corporation ("NYSHESC"). ECMC 56.1 Stmt. ¶ 17; Allied 56.1 Stmt. ¶ 10. Plaintiff obtained the Loans through a program that was originally named the "Guaranteed Student Loan Program" ("GSLP"), but has since become a part of the Stafford Loan Program. Am. Compl. ¶¶ 15, 16. Plaintiff contends that the annual interest rate for the Loans was capped at 8% pursuant to federal law. *Id.* ¶ 16 (citing 20 U.S.C. § 1077a).

On August 9, 1985, plaintiff defaulted on her Loans by failing to make timely payments. Allied 56.1 Stmt. ¶ 11. When plaintiff defaulted on her repayment obligations, the Allied defendants contend that Jamaica Savings Bank made a claim under the guaranty with NYSHESC, by which NYSHESC obtained all rights, title and interest in plaintiff's Loans. *Id.* ¶ 12; ECMC 56.1 Stmt. ¶ 18. After plaintiff failed to cure the default, the NYSHESC

commenced litigation against plaintiff in the Civil Court of New York County, which resulted in a judgment against plaintiff, entered on or about April 19, 1988 (the "Judgment"). ECMC 56.1 Stmt. ¶¶ 18-19; Allied 56.1 Stmt. ¶ 13.

On August 19, 2009, ECMC assumed all FFELP guarantor responsibilities with the assignments of the Loans, as well as the Judgment from NYSHESC, and has been the sole holder of all right, title and interest to plaintiff's obligations. ECMC 56.1 Stmt. ¶ 20; Allied 56.1 Stmt. ¶ 14.

On March 25, 2017, ECMC referred plaintiff's account to the Allied defendants to assist with collections. Allied 56.1 Stmt. ¶ 15. The Allied defendants are not judgment creditors and do not own plaintiff's Loans. *Id.* ¶ 16. Although plaintiff admits that ECMC referred plaintiff's account to Allied for collection and further admits that the Allied defendants are not judgment creditors, plaintiff contends that the Loans "were placed with ECMC for the purpose of collection." Pl.'s Allied 56.1 Opp. ¶¶ 15, 16; Declaration of Yvette Sadigh ("Sadigh Decl.") ¶ 4, Dkts. 81-2, 83-2.

Allied sent plaintiff correspondence dated March 26, 2017, advising of the amount owed on the account, how to make a payment, and how to dispute the account. Allied 56.1 Stmt. ¶ 17. Allied also sent plaintiff correspondence dated July 11, 2019, advising plaintiff that ECMC had requested that Allied provide plaintiff with additional information about her Loans, including that her defaulted Loans were subject to offset by the United States Treasury. *Id.* ¶¶ 18-19.

On December 15, 2020, plaintiff called Allied and asked Allied to communicate with her attorney, Marshal Wexler. *Id.* ¶¶ 20-21. Allied contends that because of plaintiff's authorization, Allied coded the account to note that plaintiff was represented by counsel, and therefore, Allied's subsequent communications regarding the account were had with Mr. Wexler.

*Id.* ¶ 22. Accordingly, on December 16, 2020, Mr. Wexler called Allied and requested that account information and documents be sent to him. *Id.* ¶ 23. On December 17, 2020, Allied sent the information requested by email to Mr. Wexler and plaintiff. *Id.* ¶ 24.

On June 9, 2021, Mr. Wexler called Allied and advised that he disputed the balance and requested a copy of the Note, loan balance and payment history. *Id.* ¶ 25. Allied contends that on June 9, 2021, Allied emailed Mr. Wexler information concerning the account. *Id.* ¶ 26. Plaintiff contends that she received a letter from Allied dated June 9, 2021, showing the "amount due," and enclosing the promissory notes and a payment history. *See* Pl.'s Allied 56.1 Opp. ¶ 26; Sadigh Decl. ¶ 10(b).

On August 2, 2021, Mr. Wexler made several phone calls to Allied, and Allied sent a copy of the Judgment by email at his request and sent a hard copy to plaintiff. *See* Allied 56.1 Stmt. ¶¶ 27-28. Plaintiff states that she first learned of the existence of the purported Judgment on August 2, 2021, by letter sent by Allied, but that the Judgment is "unintelligible." Pl.'s ECMC 56.1 Opp. ¶ 19; Pl.'s Allied 56.1 Opp. ¶ 13; Sadigh Decl. ¶ 5. The Court previously observed that "[t]he dollar amounts listed on the Judgment, including the total amount of the Judgment, are so faded that they cannot be read." Mem. and Order dated Sept. 30, 2023 ("M&O") at 2, Dkt. 30.

Defendants advised plaintiff that the total unpaid balance of the Loans, including interest and collection costs, was $41,962.14 as of August 9, 2021. Am Compl. ¶ 26. Plaintiff alleges that defendants erroneously calculated that amount by using the 9% annual post-judgment interest rate in New York state law, and the 9% rate provided in the promissory notes, rather than 8% as required by federal law. *Id.* ¶¶ 28, 30, 32(b). Plaintiff further contends that all collection costs are capped at 16% of unpaid principal and interest, but defendants improperly charged

plaintiff 24.92% for collection costs. *Id.* ¶¶ 31, 32(c).

**Procedural History**

On December 16, 2021, plaintiff commenced this action in the Supreme Court of the State of New York, Kings County. *See* Notice of Removal ¶ 3, Dkt. 1. On January 19, 2022, defendants removed this action from state court. *Id.*

On August 10, 2022, after the parties submitted pre-motion letters, the Honorable Hector Gonzalez, the District Judge then-assigned to this action, granted plaintiff leave to file an amended complaint. *See* Order, Dkt. 20. In her Amended Complaint, plaintiff claims that defendants' collection activities violated the FDCPA (Third Claim) and the New York GBL (Second Claim). Plaintiff also alleges claims for unjust enrichment (Fourth Claim) and conversion (Fifth Claim). She further seeks a declaration that the Judgment against her is unenforceable (First Claim). Specifically, plaintiff alleges that defendants charged plaintiff with excessive interest and collection costs in such a way that they violated the FDCPA and section 349 of the GBL. Am. Compl. ¶¶ 44-60. In addition, plaintiff alleges that defendants initiated an offset of her 2019 federal tax refund as a means of partially collecting plaintiff's unpaid Loans, which gives rise to a claim for conversion. *Id.* ¶¶ 65-68.

On September 30, 2023, in response to defendants' motions to dismiss, Judge Gonzalez dismissed plaintiff's unjust enrichment claim against all defendants but otherwise denied defendants' motions.[2] *See generally* M&O.

The parties have not engaged in discovery. Defendant ECMC now argues that it is entitled to summary judgment because: (1) ECMC is not a "debt collector" under the FDCPA; (2) ECMC falls under the bona fide fiduciary exception to the definition of "debt collector"; (3)

---

[2] ECMC had moved to dismiss all of plaintiff's claims and the Allied defendants moved to dismiss only the unjust enrichment and conversion claims.

ECMC followed federal regulations in calculating interest and collection costs on plaintiff's Loans; (4) plaintiff's state law claims are preempted by federal law; and (5) ECMC is entitled to a safe harbor defense to the GBL claim. In response, plaintiff argues that there are genuine issues of fact as to the authenticity of the Judgment, and the accuracy of the purported account balance.

The Allied defendants also contend that they are entitled to summary judgment on the grounds that: (1) plaintiff's student loan debt is owed regardless of the legibility of the Judgment; (2) certain of the alleged FDCPA violations are time barred; (3) other alleged FDCPA violations are not actionable because they involved counsel for plaintiff; (4) the GBL claims fail because the conduct alleged does not impact consumers at large, and there was no deceptive act or injury to plaintiff ; and (5) the conversion claim fails as a matter of law. In opposition, plaintiff argues that equitable tolling applies to the timeliness of plaintiff's FDCPA claims, that there is a genuine issue of fact as to whether communications during the limitations period were between the Allied defendants and plaintiff's attorney, that the alleged conduct is consumer-oriented within the meaning of the GBL, and that plaintiff has raised a genuine issue of fact as to the conversion claim.

**Discussion**

**I. Standard under Rule 56 of the Federal Rules of Civil Procedure**

Summary judgment is appropriate if the parties' submissions — including pleadings, deposition transcripts, affidavits, and other material in the record — show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant has the burden of demonstrating that no material fact is genuinely in dispute. *Coyle v.*

*United States*, 954 F.3d 146, 148 (2d Cir. 2020). "A fact is material if it 'might affect the outcome of the suit under the governing law,'" and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment is appropriate only if "on the record presented, considered in the light most favorable to [the non-moving party], no reasonable [fact-finder] could find in [its] favor." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (alterations in original) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 54-55 (2d Cir. 2005)). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). The burden of proving that there is no genuine issue of material fact rests with the moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant's burden is met, to avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a judge or jury's resolution of the parties' differing versions of the truth. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006).

Pursuant to Local Civil Rule 56.1, defendants have submitted statements of undisputed material facts warranting summary judgment, and plaintiff has submitted corresponding statements responding to each item set forth in the movants' statements. In considering the 56.1 statements, the Court did not rely on argumentative, speculative or conclusory statements of fact.

Although this case has been pending since 2022, the parties have not engaged in

discovery. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000). "Indeed, 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (quoting *Anderson*, 477 U.S. at 250 n.5). While "granting summary judgment before the parties have engaged in discovery may be disfavored, where . . . 'the issue to be decided is limited to a pure question of law, such as the interpretation of unambiguous contract language, summary judgment may be appropriate.'" *Chachkes v. David*, No. 20-CV-2879, 2021 WL 101130, at *6 (S.D.N.Y. Jan. 12, 2021) (quoting *MCC Non Ferrous Trading Inc. v. AGCS Marine Ins. Co.*, No. 14-CV-8302, 2015 WL 3651537, at *3 (S.D.N.Y. June 8, 2015) (collecting cases)).

## II. The Federal Family Educational Loan Program ("FFELP")

"The Higher Education Act of 1965 [the "HEA"] was enacted to increase educational opportunities and 'assist in making available the benefits of postsecondary education to eligible students . . . in institutions of higher education.'" *Biden v. Nebraska*, 600 U.S. 477, 483-84 (2023) (quoting 20 U.S.C. § 1070(a)). The HEA established the FFELP, a system of loan guarantees administered by the U.S. Secretary of Education that were "meant to encourage lenders to loan money to students and their parents on favorable terms." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 643 (7th Cir. 2019) (quoting *Chae v. SLM Corp.*, 593 F.3d 936, 938-39 (9th Cir. 2010)). Under the FFELP, lenders used their own funds to make loans to students attending college, and these loans were guaranteed by guaranty agencies and reinsured by the federal government. *See Biden*, 600 U.S. at 484; *Nelson*, 928 F.3d at 643; *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009); 20 U.S.C. §§ 1071, 1078(a)-

(c); 34 C.F.R. § 682.404. FFELP regulations define "guaranty agency" as a "State or private nonprofit organization that has an agreement with the Secretary under which it will administer a loan guarantee program under the [HEA]." 34 C.F.R. § 682.200; *see* 20 U.S.C. § 1085(j).

When a borrower defaults on a FFELP loan and the lender cannot obtain repayment, the lender files a claim with the guaranty agency. *See Estes v. ECMC Grp., Inc.*, 565 F. Supp. 3d 244, 253 (D.N.H. 2021). "The guaranty agency acts as a guarantor, paying the lender the unpaid balance of the defaulted loan. The guaranty agency is then assigned the loan by the lender." *Id.* (quoting *Rowe*, 559 F.3d at 1030); *see Ascendium Educ. Sols., Inc. v. Cardona*, 78 F.4th 470, 474 (D.C. Cir. 2023); 20 U.S.C. § 1078(b); 34 C.F.R. § 682.102(g). By regulation, the guaranty agency must report the default to credit agencies and annually attempt to offset defaulted borrowers' federal income tax refunds. *See* 34 C.F.R. § 682.410(b)(5)-(6), (9) (requiring guaranty agency to "engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender," including "attempt[ing] an annual Federal offset against all eligible borrowers" and "wage garnishment"). In addition, the guaranty agency must charge defaulted borrowers reasonable collection costs. *See* 20 U.S.C. § 1091a(b)(1); 34 C.F.R. § 682.410(b)(2).

As noted above, ECMC is a guaranty agency, which operates under an agreement with the DOE, pursuant to which it helps to administer the FFELP. *See* Am. Compl. ¶ 2; *see also Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19-CV-5121, 2022 WL 137885, at *1 (S.D.N.Y. Jan. 14, 2022); *Estes*, 565 F. Supp. 3d at 262. ECMC referred plaintiff's account to Allied for collection. Allied 56.1 Stmt. ¶ 15.

**III. Defendants' Claim that the Judgment is Irrelevant**

Defendants argue that plaintiff's claims related to the purported Judgment must fail

because plaintiff "legally owes the defaulted student loan balance whether the Judgment is valid or not." Allied Mem. at 6, Dkt. 73-3. According to defendants, "[e]ven assuming [p]laintiff's factual allegations to be true, none of those claims for relief are sustainable as a matter of law, because ECMC does not need the Judgment to pursue collection on Plaintiff's student loans." ECMC Mem. at 28, Dkt. 78-3. Defendants also argue that because there is no statute of limitations on a guaranty agency pursuing collection of federal student loans, the Judgment is irrelevant. *Id.* at 28-29; Allied Mem. at 6-8.

Defendants' argument is misplaced. The FDCPA and GBL section 349 are "designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 707 (S.D.N.Y. 2019) (quoting *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 143 (E.D.N.Y. 2016)). Here, plaintiff may have suffered an injury in connection with defendants' alleged deceptive practices in representing that they were enforcing a valid Judgment, which plaintiff alleges is unintelligible and unenforceable. Plaintiff is unable to locate a money judgment currently docketed against her pertaining to the Loans at issue and claims that there "may be no records establishing an enforceable judgment now." Sadigh Decl. ¶¶ 11-12. Plaintiff alleges that she suffered harm in connection with defendants' misrepresentations about the validity of the Judgment, "regardless of whether or not she owed the loan debt in question." *Michelo*, 419 F. Supp. 3d at 707 n.23. While the parties agree that federal law preempts state limitations law on the collection of student loan debts, that does not insulate defendants from liability for allegedly misleading collection practices on other grounds.

## IV. Declaratory Judgment Claim

The Allied defendants further argue that plaintiff cannot obtain a declaratory judgment

that the state court Judgment against her is unenforceable because there is no "actual controversy" between the parties. Allied Mem. at 9. The Allied defendants contend that since it is undisputed that they acted only as collection agencies, that they are not proper parties to the declaratory judgment claim. *Id.*

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," a federal court "may declare the rights . . . of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To determine if an actual controversy exists in a declaratory judgment action, first, "the defendant's conduct must have 'created a real and reasonable apprehension of liability on the part of the plaintiff.'" *Ritz Hotel, Ltd. v. Shen Mfg. Co.*, 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005) (quoting *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595 (2d Cir. 1996)). Second, "the plaintiff must have 'engaged in a course of conduct which has brought it into adversarial conflict with the defendant.'" *Id.* If an actual controversy exists, "federal courts have discretion in issuing a declaratory judgment and among relevant considerations in exercising this discretion is whether the judg[]ment will serve a useful purpose in clarifying or settling the legal issues involved." *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 108 (E.D.N.Y. 2025) (internal quotation marks and citation omitted), *adhered to in part on reconsideration*, 2025 WL 2178194 (E.D.N.Y. Aug. 1, 2025). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

Here, as collection agencies retained by ECMC, which attempted to collect on an alleged uncollectable Judgment, there is a "substantial controversy" between the parties regarding the enforceability of that Judgment. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Therefore, the Allied defendants' motion is denied as to plaintiff's

declaratory judgment claim.

## V. Fair Debt Collection Practices Act Claim Against ECMC

Defendant ECMC argues that it does not qualify as a "debt collector" within the definition of the FDCPA. ECMC Mem. at 8-11. Further, ECMC contends that it is exempted from the FDCPA because its collection activities are incidental to its fiduciary obligation to the United States Department of Education. *Id.* at 11-13.

### A. Debt Collector

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." *Sykes v. Mel S. Harris Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015); *see* 15 U.S.C. § 1692(e). "A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 221-22 (E.D.N.Y. 2023), *aff'd*, 2024 WL 4404043 (2d Cir. Oct. 4, 2024) (internal quotation marks and citation omitted). The FDCPA defines "debt collector" as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, the FDCPA specifically exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." *Id.* § 1692a(6)(F).

Plaintiff concedes that the FDCPA generally does not apply to creditors collecting their

own debts. *See* Pl.'s ECMC Opp. at 6, Dkt. 83. However, plaintiff argues that because ECMC acquired the Loans after plaintiff defaulted, there is a genuine question of fact as to whether ECMC meets the statutory definition of "debt collector." *Id.* at 6-7.

Plaintiff's argument is misplaced. As discussed above, it is undisputed that ECMC is a "guaranty agency" under the HEA, which obtained all right, title and interest to the Loans at issue. *See* Am. Compl. ¶ 2; Pl.'s ECMC 56.1 Opp. ¶¶ 3, 20; Klisch Decl. ¶¶ 3-6.[3] Accordingly, ECMC did not attempt to collect on a debt that was owed to "another." *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (finding that entity collecting on debt it owns and purchased after the debt entered default is not a debt collector); *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19-CV-5121, 2022 WL 137885, at *5 (S.D.N.Y. Jan. 14, 2022).[4] Rather, ECMC attempted to collect plaintiff's debt for its own account, as the holder and guarantor of plaintiff's delinquent FFELP Loans. *See* Klisch Decl. ¶¶ 3, 11, 14, 19. As several courts have specifically found, ECMC does not meet the definition of "debt collector" under the FDCPA because it did not attempt to collect debts owed to "another." *See Lima v. United States Dep't of Educ.*, 947 F.3d 1122, 1127 (9th Cir. 2020); *Manchanda*, 2022 WL 137885, at *5; *Estes*, 565 F. Supp. 3d at 262-63; *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *5 (E.D.N.Y. Sept. 22, 2020) (dismissing FDCPA claim); *Cadiz v. Educ. Credit Mgmt. Corp.*, No. 17-CV-6362, 2019 WL 4254484, at *2 (N.D. Ill. Feb. 21, 2019); *see also Henson*, 582 U.S.

---

[3] Plaintiff does not identify any discovery that she seeks that would contradict ECMC's declaration, nor does she provide any basis for her "understanding" that "the Loans were placed with ECMC for the purpose of collection." Sadigh Decl. ¶ 4.

[4] The cases relied on by plaintiff precede the Supreme Court's decision in *Henson*. *See* Pl.'s ECMC Opp. at 7 (citing *Pereira v. Ocwen Loan Servicing, LLC*, No. CV-11-2672, 2012 U.S. Dist. LEXIS 56044 (E.D.N.Y. Mar. 12, 2012); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013); *Izmirligil v. Bank of N.Y. Mellon*, No. CV-11-5591, 2013 U.S. Dist. LEXIS 47641 (E.D.N.Y. Apr. 2, 2013)), Dkt. 83. There, the Supreme Court held that an entity collecting on debt it owns and purchased after the debt entered default is not a "debt collector." *Hensen*, 582 U.S. at 83; *Manchanda*, 2022 WL 137885, at *5 ("Plaintiff relies on overruled law" to argue "that ECMC is a debt collector under the second definition because ECMC purchases defaulted debt and then collects on it.").

at 83.[5]

Nor does ECMC qualify under the first prong that its principal purpose is the collection of defaulted student loans. *See Manchanda*, 2022 WL 137885, at *5. Plaintiff argues that because ECMC attempted to collect a debt that it acquired after plaintiff defaulted, ECMC's principal purpose is the collection of such debts. *See* Pl.'s ECMC Opp. at 7, Dkt. 83. Here, ECMC obtains title to the defaulted Loans by operation of law through its agreement with the DOE as a guaranty agency under the HEA. *See* 20 U.S.C. § 1078(c)(2)(A). After ECMC obtains title to defaulted loans, its collection activities are required by law. *See* 34 C.F.R. § 682.410. Guaranty agencies are required to engage in collection activities because they are reinsured by the DOE, which is the ultimate guarantor of FFELP loans. *See* 20 U.S.C. § 1078(c)(1)(A); 34 C.F.R. § 682.404. As several courts have found, the principal purpose of ECMC is the administration of the FFELP, *i.e.,* guaranteeing loans made by the DOE, which includes the collection of defaulted student loans. *See Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1035 (9th Cir. 2009); *Black v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1035 (7th Cir. 2006); *Manchanda*, 2022 WL 137885, at *5 ("the record shows that ECMC is a guaranty agency that provides guarantor services pursuant to FFELP"); *Estes*, 545 F. Supp. 3d at 262. "Thus, unlike traditional debt buyers, . . . [ECMC] does not buy defaulted debts solely for collection purposes. Rather, [ECMC] obtains title to defaulted student loans by operation of law through its agreement with the [DOE] to act as a guaranty agency under the HEA." *Estes*, 545 F. Supp. 3d at 262 (quoting *Cadiz*, 2019 WL 4254484, at *3). Accordingly, based on the statutory and regulatory scheme, ECMC's principal purpose is not to collect debts. *See Manchanda*, 2022 WL 137885, at *5; *Estes*, 545 F. Supp. 3d at 262; *Cadiz*, 2019 WL 4254484, at *3.

[5] *Accord Rutz v. Educ. Credit Mgmt. Corp.*, No. 11-CV-1421, 2012 WL 78394, at *2 (S.D. Cal. Jan. 9, 2012); *Rowe v. Educ. Credit Mgmt. Corp.*, 730 F. Supp. 2d 1285, 1289 (D. Or. 2010).

For the reasons discussed above, the Court finds that ECMC does not meet the definition of a "debt collector."

**B. Exemption from Definition of Debt Collector**

ECMC further argues that even if it qualifies as a "debt collector," it comes within the bona fide fiduciary exemption to the definition of "debt collector." ECMC Mem. at 11-13. The FDCPA specifically excludes from the definition of a debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i); *see Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192, 2018 WL 4680023, at *5-6 (S.D.N.Y. Sept. 28, 2018). "Two requirements must be satisfied for an entity to come within the exception to the FDCPA for collection activities 'incidental to a bona fide fiduciary obligation.'" *Allen*, 2018 WL 4680023, at *5-6 (quoting *Rowe*, 559 F.3d at 1032). "First, the entity must have a 'fiduciary obligation.'" *Rowe*, 559 F.3d at 1032. "Second, the entity's collection activity must be 'incidental to' its 'fiduciary obligation.'" *Id.*

In deciding ECMC's motion to dismiss, Judge Gonzalez found that because ECMC took assignment of the Loans from NYSHESC, after plaintiff had already defaulted on her loan, "more factual development is required to determine whether ECMC's loan collection efforts are 'incidental' to its other fiduciary responsibilities to the Department of Education." M&O at 10.[6] However, the Court acknowledged, and plaintiff does not dispute, that "ECMC is a fiduciary of the Department of Education." *Id.* at 9; *see* Am. Compl. ¶ 2; *see also* Pl.'s ECMC 56.1 Opp. ¶ 8 ("Admitted to the extent that 34 C.F.R. § 682.410(a)(5) and 34 C.F.R. § 682.419(a) require

[6] In the case relied on by Judge Gonzalez, *Manchanda v. Navient Student Loans et al.*, No. 19-CV-5121, 2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020), the Court later granted ECMC's motion for summary judgment on plaintiff's FDCPA claim on the grounds that ECMS was not a "debt collector," *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19-CV-5121, 2022 WL 137885 (S.D.N.Y. Jan. 14, 2022).

guaranty agencies to fulfill certain fiduciary obligations."). The first requirement, therefore, is easily satisfied.

"Generally speaking, the collection of defaulted student debts by a guaranty agency is 'incidental to' its primary function." *Rowe*, 559 F.3d at 1035; *see Lima*, 947 F.3d at 1127. As discussed above, under the relevant statute and regulations, the primary function of a guaranty agency participating in the FFELP is to guarantee loans made by other entities. *Rowe*, 559 F.3d at 1035; *see Lima*, 947 F.3d at 1124. Although guaranty agencies are required to undertake collection activities on defaulted student loans, the collection activities are "incidental" to their primary function. *See Lima*, 947 F.3d at 1127; *Cadiz*, 2019 WL 4254484, at *3; *Allen*, 2018 WL 4680023, at *5-6. Plaintiff appears to argue that because ECMC is not the original guarantor of the loan, its collection activity is not "incidental to" ECMC's fiduciary duty to the DOE. *See* Pl.'s ECMC Opp. at 7-8; *see also* M&O at 9-10 (noting that ECMC was not the original guarantor of plaintiff's student loans). However, based on the regulatory scheme, it is clear that ECMC did not buy the "defaulted debts solely for collection purposes." *Cadiz*, 2019 WL 4254484, at *3. "Rather, [ECMC] obtains title to defaulted student loans by operation of law through its agreement with the DOE to act as a guaranty agency under the HEA." *Id.* (citing 20 U.S.C. § 1078(c)(2)(A)). Accordingly, this Court agrees with the long line of cases that have concluded that ECMC is a guaranty agency, that its collection activities are incidental to its fiduciary duties to the Department of Education, and, therefore, is not subject to liability under the FDCPA. *See Lima*, 947 F.3d at 1127; *Bennett v. Premiere Credit of N. Am., LLC*, 504 F. App'x 872, 878 n.4 (11th Cir. 2013); *Estes*, 565 F. Supp. 3d at 264 (granting summary judgment because ECMC fits within the fiduciary exemption); *Cadiz*, 2019 WL 4254484, at *5 (finding that bona fide fiduciary exemption applied to ECMC where it attempted to collect debt it

acquired post-default); *see also Darisaw v. Penn. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1305 (11th Cir. 2020) (finding that guaranty agency fell within fiduciary exception to FDCPA's definition of debt collector); *Allen*, 2018 WL 4680023, at *5-6 ("Because USAF, acting as a guarantor, has a bona fide fiduciary obligation to the DOE, and because USAF's collection activity is incidental to that fiduciary obligation, USAF is not a 'debt collector' as defined by the FDCPA."). Even if ECMC qualified under the definition of "debt collector" under the FDCPA, the fiduciary exemption would apply.

Based on facts upon which there is no genuine issue of dispute, the Court grants ECMC's motion for summary judgment on plaintiff's FDCPA claims.

## VI. Fair Debt Collection Practices Act Claim Against the Allied Defendants

### A. Statute of Limitations

The Allied defendants argue that certain of the communications underlying plaintiff's FDCPA claim are time barred. *See* Allied Mem. at 11. Specifically, the Allied defendants contend that collection activities undertaken before December 16, 2020, one year before the filing of the Complaint, are beyond the applicable one-year statute of limitations.

FDCPA claims are subject to a one-year statute of limitations from the date of the violation. *See Makhnevich v. Bougopoulos*, 650 F. Supp. 3d 8, 16 (E.D.N.Y. 2023), *aff'd sub nom. Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-CV-202, 2024 WL 2207061 (2d Cir. May 16, 2024); 15 U.S.C. § 1692k(d). "[T]he latest date upon which the one-year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." *Scavone v. Frontline Asset Strategies, LLC*, No. 19-CV-1514, 2020 WL 589641, at *5 (E.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 372785 (E.D.N.Y. Jan. 23, 2020).

To avoid the time bar, plaintiff contends that the Allied defendants "misrepresented the

amount owed and the validity of the debt, which obscured the existence of a claim." Pl.'s Allied Opp. at 9, Dkt. 81. The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998). For equitable tolling to apply, a litigant must demonstrate "that some extraordinary circumstance stood in her way and . . . that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (internal quotation marks and citation omitted) (quoting *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023)). "A defendant may be deemed to have concealed the existence of the cause of action when the conduct forming the basis of the action is 'inherently self-concealing.'" *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098, 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016) (quoting *State of New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). However, equitable tolling is appropriate only "in rare and exceptional circumstances," in which a party is "prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003), *as amended* (July 29, 2003) (internal quotation marks and alteration omitted).

Plaintiff has not provided a sufficient basis to invoke equitable tolling. For example, plaintiff has not alleged, or provided any basis to infer, that the miscalculated interest and collection charges, which provide the basis for plaintiff's FDCPA claims, were affirmatively concealed. *See Saint-Jean*, 129 F.4th at 144 (finding affirmative concealment when the defendant-mortgage company rushed the plaintiffs to sign documents that excluded the default interest rate and dissuaded the plaintiffs from bringing counsel to the closing). In fact, plaintiff's claim that the Allied defendants concealed the existence of an FDCPA claim is only conclusory. *See Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) ("Macias's

attempt to invoke equitable tolling is unavailing because he pleads in only a conclusory fashion that appellees prevented him from discovering the alleged violation."). Moreover, to the extent that plaintiff argues that a "continuing violation" theory applies here, there is no authority within the Second Circuit to support a continuing violation theory under the FDCPA. *See Michelo*, 419 F. Supp. 3d at 695. Therefore, plaintiff's FDCPA claims based on the March 26, 2017 and July 11, 2019 communications are barred by the statute of limitations.

**B. Communication with Plaintiff's Attorney**

The Allied defendants argue that the remaining FDCPA claims are not actionable because the FDCPA does not apply where an attorney is interposed as an intermediary between a debt collector and a consumer. *See* Allied Mem. at 11-15. Plaintiff contends that there is an issue of disputed fact whether the Allied defendants communicated directly with plaintiff. *See* Pl.'s Allied Opp. at 10.

According to the Allied defendants, "i[t] is well settled in this Circuit that communications between a debt collector and the debtor's attorneys are not actionable under the FDCPA." Allied Mem. at 11. Although there are several courts which have found that communications to an attorney are unlikely to deceive a consumer, other courts have concluded that that the FDCPA applies to communications to counsel.[7] *See Wilson v. Selip & Stylianou, LLP*, No. 24-CV-4108, 2026 WL 851338, at *7 (S.D.N.Y. Mar. 27, 2026); *Rosa v. Mandarich L. Grp., LLP*, No. 22-CV-4720, 2024 WL 871209 at *9 & n.5 (S.D.N.Y. Feb. 29, 2024)

[7] In many of the cases involving communications with an attorney, the communications were had "solely with the attorney." *See, e.g., Song v. Tromberg, Morris & Poulin, PLLC*, No. 21-CV-3171, 2021 WL 3931353, at *2 (E.D.N.Y. Sept. 2, 2021); *Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004). In some of the cases cited by the Allied defendants, the court did not address whether communications with a debtor's attorney are actionable. *See Makhnevich v. Bougopoulos*, No. 18-CV-285, 2022 WL 939409, at *11-12 (E.D.N.Y. Mar. 29, 2022), *aff'd*, No. 22-936, 2024 WL 1653464 (2d Cir. Apr. 17, 2024); *Williams v. Ocwen Loan Servicing, LLC*, No. 19-CV-2187, 2020 WL 5757640, at *9 (E.D.N.Y. Sept. 27, 2020); *Araujo v. PennyMac Loan Servs., LLC*, No. 15-CV-62, 2015 WL 5664259, at *3 (E.D.N.Y. Sept. 23, 2015); *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 411 (E.D.N.Y. 2012).

(recognizing that at least the Third, Fourth, Sixth, Seventh and Eleventh Circuits "have all held that the FDCPA encompasses communications made to a consumer's lawyer").

Here, at best, the Allied defendants can demonstrate that counsel was copied on the alleged communications sent to plaintiff. The Court is not prepared to find, based on the record currently before the Court, that copying plaintiff's counsel on communications to plaintiff automatically insulates those communications from the purview of the FDCPA. As the court in *Rosa* explained, "[t]he statutory language of the FDCPA and its purposes . . . are inconsistent with the categorical exclusion of transmissions to counsel from the definition of 'communication.'" 2024 WL 871209 at *9; *see Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1304 (11th Cir. 2015) (barring liability for communications to a consumer's attorney "would destroy, not achieve the spirit and force of the FDCPA"). "The substantive provisions of the FDCPA that are directed to abusive, misleading, or unfair or unconscionable conduct 'do not designate any class of persons, such as lawyers, who can be abused, [misled], etc., by debt collectors with impunity.'" *Rosa*, 2024 WL 871209, at *9 (quoting *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007)). As a textual matter, section 1692c(b), in a section headed "communication with third parties," proscribes the persons with whom the debt collector may have a communication regarding a consumer's debt, but specifically excepts from that limitation communications with the consumer's lawyer. 15 U.S.C. § 1692c(b); *see Rosa*, 2024 WL 871209, at *9. There would be no reason to provide for such an exception if communication with a consumer's lawyer were already categorically excluded from the definition of communication. *See Rosa*, 2024 WL 871209, at *9. Although the Allied defendants cite to Second Circuit *dicta* stating that "alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA," the Second Circuit noted that this

point was "not dispositive to [its] holding." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). Since *Kropelnicki*, the Second Circuit has recognized that it has "not [yet] ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties," such as counsel. *See Sykes*, 780 F.3d at 97 n.6. On the other hand, in *Heintz v. Jenkins*, 514 U.S. 291(1995), the Supreme Court assumed without deciding that the FDCPA is violated when a debt collector sends a letter misrepresenting the amount of a debt to a consumer's lawyer. *See* 514 U.S. at 293.

Therefore, the Court denies the Allied defendants' motion for summary judgment with respect to plaintiff's timely FDCPA claims based on the current record before the Court.

## VII. Claims Based on Excessive Interest and Collection Costs

ECMC argues that plaintiff's claims that ECMC charged excessive interest and collection costs must fail because ECMC complied with federal regulations. *See* ECMC Mem. at 13-18.

### A. Interest Rate

In the Amended Complaint, plaintiff alleges that "Defendants are applying a 9% interest rate to the Loans, despite the fact that federal law caps the interest rate at 8%." Am. Compl. ¶ 28. According to plaintiff, under 20 U.S.C. § 1077a(b), loans obtained after January 1981 are variable rate loans capped at 8%, if the applicable treasury bill is below 9%. *Id.* ¶ 32(b); *see* Pl.'s ECMC Opp. at 9, Dkt. 83 ("under § 1077a(b) when the applicable T-bill rate is below 9%, as was the case at all relevant times, the rate is the 8% rate set in (a)(3)"). Since the treasury rate has been below 8% since 1984, plaintiff contends that the applicable interest rate is 8%. Am. Compl. ¶ 32(b). ECMC, on the other hand, argues that the provisions of section 1077a(b) do not apply here. ECMC Mem. at 14-15.

Indeed, plaintiff's reliance on section 1077a is misplaced. The regulations contained in

Subpart D, entitled "Administration of the Federal Family Education Loan Programs by a Guaranty Agency," govern after the guaranty agency pays a default claim to the original lender and takes assignment or ownership of the defaulted debt. *See* Klisch Decl. ¶¶ 3, 6, 17; 34 C.F.R. §§ 682.102(g); 682.410(b)(6); *see also Ascendium Educ. Sols.*, 78 F.4th at 474 (describing administrative scheme). Because plaintiff's Loans are post-default, the guaranty agency is required by the regulations contained in Subpart D to enforce collection. *See* Klisch Decl. ¶¶ 6, 8, 15-17; *United States v. Lobdell*, No. 12-CV-00347, 2013 WL 74247, at *2 (N.D.N.Y. Jan. 4, 2013); *United States v. Smith*, No. 12-CV-261, 2013 WL 74246, at *3 (N.D.N.Y. Jan. 3, 2013); *United States v. Davis*, No. 07-CV-4447, 2007 WL 2287889, at *3 (E.D.N.Y. Aug. 8, 2007).

Specifically, 34 C.F.R. § 682.410(b)(3) provides that a "guaranty agency" must "charge the borrower interest on the amount owed . . . at a rate that is the greater of" the state law judgment rate or the rate "established by the terms of the borrower's original promissory note." 34 C.F.R. § 682.410(b)(3)(i); *see* Klisch Decl. ¶¶ 15, 17; *Davis*, 2007 WL 2287889, at *3. In the present case, plaintiff agreed to an interest rate of 9% per annum, which is also the New York state law judgment rate. Klisch Decl. ¶ 17. Thus, defendants are correct that plaintiff's claims based on defendants improperly charging 9% interest must fail as a matter of law. *See Lodbell*, 2013 WL 74247, at *2 (applying rate contained in promissory note, pursuant to section 682.410(b)(3)); *Smith*, 2013 WL 74246, at *3 (same); *Davis*, 2007 WL 2287889, at *3. Plaintiff has not offered any reason that the applicable regulations should not be enforced here.

Moreover, as ECMC correctly argues, plaintiff would not qualify for an 8% rate under section 1077a(b). Section 1077a(b) is applicable only to "borrowers described in" Section 1077a(a)(3). *See* 20 U.S.C. § 1077a(b). Section 1077a(a)(3) applies only to a borrower who had "no outstanding balance of principal or interest" on a loan for which the interest rate was

determined under subparagraph (1) or (2).[8] *See* 20 U.S.C. § 1077a(a)(3) (the rate of interest shall be "8 percent per year on the unpaid principal balance of the loan for a loan to cover the cost of education . . . *in the case of any borrower who, on the date of entering into the note or other written evidence of the loan, has no outstanding balance of principal or interest on any loan* for which the interest rate is determined under paragraph (1) or (2) of this subsection") (emphasis added). It is undisputed that plaintiff fails to satisfy the "no outstanding balance" requirement "for which the rate was determined under paragraph (1) or (2)," since her promissory notes provided for interest at the rate of 9%. Klisch Decl. ¶ 17. Plaintiff's argument that "Section 1077a is a difficult to comprehend statute with no judicial guidance on interpretation" is insufficient to survive summary judgment. *See* Pl.'s ECMC Opp. at 9. Thus, plaintiff's claims that defendants erroneously calculated the interest due must fail.

---

[8] Section 1077a(a) provides:

> **(a) Rates to be consistent for borrower's entire debt**
>
> With respect to any loan to cover the cost of instruction for any period of instruction beginning on or after January 1, 1981, the rate of interest applicable to any borrower shall—
>
>> (1) not exceed 7 percent per year on the unpaid principal balance of the loan in the case of any borrower who, on the date of entering into the note or other written evidence of that loan, has an outstanding balance of principal or interest on any loan made, insured, or guaranteed under this part, for which the interest rate does not exceed 7 percent;
>>
>> (2) except as provided in paragraph (3), be 9 percent per year on the unpaid principal balance of the loan in the case of any borrower who, on the date of entering into the note or other written evidence of that loan, has no outstanding balance of principal or interest on any loan described in paragraph (1) or any loan for which the interest rate is determined under paragraph (1); or
>>
>> (3) be 8 percent per year on the unpaid principal balance of the loan for a loan to cover the cost of education for any period of enrollment beginning on or after a date which is 3 months after a determination made under subsection (b) in the case of any borrower who, on the date of entering into the note or other written evidence of the loan, has no outstanding balance of principal or interest on any loan for which the interest rate is determined under paragraph (1) or (2) of this subsection.

20 U.S.C. § 1077a(a).

**B. Collection Costs**

Plaintiff alleges that the collection costs assessed against her should have been capped at 16% of principal and interest, pursuant to federal regulation. *See* Pl.'s ECMC Opp. at 10. ECMC argues that the regulation relied on by plaintiff does not apply here. *See* ECMC Mem. at 17-18.

Section 1091a requires the guaranty agency undertaking to collect on defaulted student loans to charge the "reasonable" costs incurred in collecting the delinquent claim. 20 U.S.C. § 1091a(b) ("a borrower who has defaulted on a loan . . . shall be required to pay, in addition to other charges specified . . . reasonable collection costs"). Federal regulation requires that the collection costs charged to a borrower "include, but are not limited to, all attorneys' fees, collection agency charges, and court costs, . . . equal [to] the lesser of: (A) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or (B) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education." 34 C.F.R. § 682.410(b)(2)(iii).

ECMC correctly argues that one of the regulations plaintiff cited in the Amended Complaint does not apply since it is undisputed that plaintiff did not successfully rehabilitate her loan out of default. ECMC Mem. at 17-18; Am. Compl. ¶ 32(c) (citing 34 C.F.R. § 682.405(b)(vi)(B)); Klisch Decl. ¶ 20. However, ECMC has not demonstrated that it is entitled to judgment as a matter of law based on the record before the Court. In the Amended Complaint, plaintiff further alleges that "34 C.F.R. § 682.410(b)(2)(iii)(B) provides that guaranty agencies can only impose an amount of collection costs equal to or less than what the Department of Education can impose, which is no more than 16%." Am. Compl. ¶ 32(c). ECMC also recognizes that this regulation controls. *See* ECMC Mem. at 17 (collection costs are "required to

be calculated as a percentage-based cost pursuant to the formula found in 34 C.F.R. § 30.60, or the amount charged by the U.S. Department of Education, whichever is less"). However, ECMC has not submitted any evidence to refute plaintiff's claim that "the Department of Education can impose . . . no more than 16%." Am. Compl. ¶ 32(c). The statement in the Klisch declaration that "Plaintiff was charged 24.34% in collection charges, as she would have been if the Loans were held by the Department of Education," Klisch Decl. ¶ 16, is entirely conclusory. Defendants have not provided any authority for that statement. Plaintiff is entitled to test this assertion through discovery. *See C.M. v. New York City Dep't of Educ.*, No. 22-CV-9307, 2025 WL 2452344, at *2 (S.D.N.Y. Aug. 26, 2025) (denying without prejudice summary judgment motion based on incomplete record). Therefore, the Court denies, based on the current record, ECMC's motion for summary judgment as it relates to collection costs.

## VIII. GBL Safe Harbor Provision

With respect to the New York GBL claim, ECMC argues that it is entitled to avail itself of the GBL's express safe harbor provision. *See* ECMC Mem. at 24-28.

Section 349(d) provides:

> In any action or proceeding brought pursuant to this section it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

N.Y. Gen Bus. Law § 349(d). According to ECMC, this provision insulates it from liability because it complied with the HEA, and its implementing regulations. ECMC Mem. at 24-25. As discussed above, ECMC has established that it correctly applied a 9% interest rate to the collection of plaintiff's student loan. Thus, to that extent, defendants are entitled to the GBL safe

harbor provision. However, ECMC has not established, based on the record before the Court, that the GBL's safe harbor provision applies to the calculation of collection costs because there is a genuine issue of fact as to whether ECMC complied with the applicable regulations. *See* M&O at 8-9 (citing *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 71 (E.D.N.Y. 2017) and *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 145-46 (S.D.N.Y. 2021)); *cf. Chery v. Conduent Educ. Servs. LLC*, No. 18-CV-75, 2019 WL 1427140, at *6 (N.D.N.Y. Mar. 29, 2019) ("Defendants have failed to establish that this allegedly deceptive practice was either 'authorized by the Secretary of Education' or 'conformed to any explicit dictates of federal law.'") (citation omitted).

**IX. Elements of GBL Claim**

Defendants further argue that plaintiff's claim that they engaged in deceptive practices under New York's GBL fails to meet the required elements. *See* ECMC Mem. at 26-28; Allied Mem. at 16-20.

Section 349 prohibits "[d]eceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State and provides a private right of action to "any person who has been injured by reason of" a violation of its provisions. N.Y. Gen Bus. Law §§ 349(a), (h). "[S]ection 349 is directed at wrongs against the consuming public. . . . Thus, as a threshold matter, plaintiffs . . . must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). To state a claim under section 349, a plaintiff must allege: "(1) that the defendant's conduct is consumer-oriented, (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (internal quotation marks and

citations omitted); *see Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see Michelo*, 419 F. Supp. 3d at 701.

**A. Consumer-Oriented**

The "consumer-oriented" conduct element requires a plaintiff to show that the practices complained of have a "broad impact on consumers at large." *N.Y.U. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (quoting *Oswego*, 85 N.Y.2d at 25); *see Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020); *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015). "[W]hat matters is whether the defendant's allegedly deceptive act or practice is directed to the consuming public and the marketplace." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (N.Y. 2021). "Private contract disputes unique to the parties . . . would not fall within the ambit of the statute." *Oswego*, 85 N.Y.2d at 25. This requirement has been "broadly interpreted," and is met "[s]o long as the conduct at issue can potentially affect similarly situated consumers." *Koch*, 626 F. App'x at 340 (quoting *Oswego*, 85 N.Y.2d at 26-27).

Defendants argue that plaintiff's allegations are specific to her own dispute with defendants. However, defendants' argument is contradicted by the allegations contained in the Amended Complaint, which alleges that other borrowers of student loans that originated before July 1, 1988 under [the Guaranteed Student Loan Program] were charged an interest rate greater than 8% after 1984, were over charged collection costs or were otherwise misled about the amount they owed. *See* Am. Compl. ¶ 33. Prior to any discovery, plaintiff's allegations suffice to "suggest that the defendants' conduct constituted more than just a private dispute . . . and had a broader impact on" borrowers with such student loans. *See Ali v. Am. Univ. of Antigua, Inc.*,

No. 25-CV-2065, 2026 WL 867098, at *15 (S.D.N.Y. Mar. 30, 2026); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263, 2021 WL 4066821, at *19 (S.D.N.Y. Sept. 7, 2021) (holding that the plaintiff's allegation that "other consumers [faced the same conduct was] sufficient to plead consumer-oriented conduct"). "Consumer-oriented" has been defined in this circuit as "conduct that potentially affects similarly situated consumers." *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (citation and internal quotations omitted). Here, plaintiff plausibly alleges that the conduct potentially affected a class of similarly situated student loan borrowers. Whether defendants applied their practices uniformly across their student loan portfolio is a matter for discovery. Accordingly, plaintiff has alleged that defendants engaged in deceptive practices directed at a large class of similarly situated student debtors. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 449-50 (E.D.N.Y. 2013).

**B. Deceptive Act or Practice**

Next, defendants argue that plaintiff cannot show a deceptive act or practice by defendants because they acted "strictly in accordance with federal regulations." ECMC Mem. at 27. However, as discussed above, defendants have not established that the collection costs charged to plaintiff complied with federal regulations. Accordingly, based on the record before the Court, there is a genuine issue of fact whether defendants misrepresented the amount plaintiff owed. Similarly, there is an issue of disputed fact whether defendants committed "deceptive acts" by "representing there are judgments against borrowers when those judgment[s] are unintelligible and may not be currently docketed." Am. Compl. ¶ 47.

**C. Injury**

Finally, defendants argue that plaintiff's section 349 claim must fail because she has not pleaded an injury. *See* Allied Mem. at 19-20; ECMC Mem. at 27-28.

Courts have "recognize[d] several types of harm which might be cognizable as a legal injury, such as physical, emotional, pecuniary or reputational harm, or the impairment of a recognized legal right." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016); *see also Guzman v. Mel S. Harris & Assocs., LLC*, No. 16-CV-3499, 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018) ("Emotional harm . . . satisf[ies] the injury requirement for a claim under . . .GBL § 349."); *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013) (finding "time spent and costs incurred . . . to defend against . . . collections lawsuits" sufficient to satisfy section 349's injury requirement).

Here, plaintiff alleges that defendants' "deceptive practices caused her financial harm, including overpayment and confusion regarding the enforceability of the Judgment." Pl.'s Allied Opp. at 13; *see* Sadigh Decl. ¶ 13 (attesting that defendants' "deceptive acts and practices . . . caused me harm."); Am. Compl. ¶ 60 (alleging "economic and noneconomic damages"). Indeed, plaintiff may state a claim under section 349 in connection with defendants' alleged deceptive practices "regardless of whether or not she owed the loan debt in question." *Michelo*, 419 F. Supp. 3d at 707 n.23 (denying motion to dismiss where plaintiff alleged a scheme to fraudulently obtain default judgments for student loan debts). Based on the limited record before the Court regarding damages, the Court cannot find that plaintiff did not suffer a cognizable injury.

Therefore, the Court denies defendants' motion for summary judgment on plaintiff's GBL section 349 claims.

## X. Plaintiff's State Law Claims Do Not Fail Because There is No Private Right of Action under the HEA

ECMC argues that plaintiff's state law claims alleging that ECMC failed to comply with federal regulations must fail because there is no private right of action for alleged violations of the HEA. ECMC Mem. at 18-19. This argument is easily disposed of since, unlike the list of

cases cited by ECMC, here, plaintiff has not alleged a claim under the HEA. *See Chery*, 2019 WL 1427140, at *4. Plaintiff is entitled to allege a state law claim based upon a violation of federal law, even where there is no federal private right of action. *See id.* (denying motion to dismiss state law claims based on HEA); *Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 153 (W.D.N.Y. 2019) ("In this case, there is no federal private right to action under the [Federal Food, Drug, and Cosmetic Act] or the [Medical Devices Amendments of 1976], and Plaintiff was required to plead a parallel state law claim based upon a violation of federal law in order to avoid preemption."). In fact, "the Supreme Court . . . has recognized that the availability of a state law claim is even more important in an area where no federal private right of actions exists." *Chery*, 2019 WL 1427140, at *4 (quoting *Coll. Loan Corp. v. SLM Corp., a Delaware Corp.*, 396 F.3d 588, 598 (4th Cir. 2005)).

## XI. Preemption

### A. Express Preemption

First, ECMC argues that plaintiff's state law claims, including conversion, fail because they are expressly preempted by the HEA and its implementing regulations. *See* ECMC Mem. at 21-22.

ECMC relies on federal regulations which require a guaranty agency to take certain collection efforts including, "attempt[ing] an annual Federal offset against all eligible borrowers . . . to offset a borrower's State or Federal income tax refunds" and "initiat[ing] administrative wage garnishment proceedings against all eligible borrowers." 34 C.F.R. § 682.410(b)(5), (b)(6). These regulations contain express preemption language: "The provisions of paragraphs (b)(2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions." *Id.*

§ 682.410(b)(8). ECMC further cites a statutory provision that states: "Notwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual . . . ." 20 U.S.C. § 1095a. ECMC argues that "where ECMC complied with its regulatory obligation to undertake collection activity on a defaulted loan by facilitating a federal tax refund offset, any claim under state law that would interfere with that obligation is expressly preempted." ECMC Mem. at 22.

The party "asserting that federal law preempts state law bears the burden of establishing preemption." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013). Here, ECMC raised the same arguments in its motion to dismiss before Judge Gonzalez. *See* Dkt. 23-1 at 7-9. Judge Gonzalez observed that plaintiff alleges that defendants violated New York law by failing to comply with federal requirements related to collections, rather than alleging that New York law contains different or conflicting requirements from federal law. *See* M&O at 7. Accordingly, since plaintiff does not claim that there is a conflict between federal requirements governing collections and state law, the HEA's express preemption provisions do not apply. *Id.* at 7-9. This Court agrees with Judge Gonzalez's well-reasoned opinion.[9] *See Manchanda*, 2020 WL 5802238, at *8 n.6 ("ECMC does not explain how Manchanda's GBL § 349 claim conflicts with those regulations"); *see also Nelson*, 928 F.3d at 649 ("State law could impose liability on these affirmative misrepresentations without imposing additional disclosure requirements on Great Lakes [than federal law], and thus avoid preemption under § 1098g.").

---

[9] A court may revisit prior rulings, when a party raises "cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal quotation marks and citation omitted). ECMC has not offered a compelling reason to reconsider Judge Gonzalez's rulings on preemption. *See Hahn v. JetBlue Airways Corp.*, 837 F. Supp. 3d 500, 505 (E.D.N.Y. 2026).

**B. Implied Preemption**

Next, ECMC argues that plaintiff's allegation that ECMC's imposition of interest and collection costs violates state law is impliedly preempted.[10] *See* ECMC Mem. at 22-23. Again, ECMC raised the same argument before Judge Gonzalez. *See* Dkt. 23-1 at 9-11.

"Conflict preemption arises where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Coalition for Competitive Elec., Dynergy, Inc. v. Zibelman*, 906 F.3d 41, 49 (2d Cir. 2018) (citation omitted). Judge Gonzalez rejected ECMC's motion because plaintiff's claims would not create a conflict between federal regulations and state law. *See* M&O at 7-8. As Judge Gonzalez recognized, "the HEA does not . . . displace all claims under New York [law] simply because the claims relate to a defendant's attempt to collect student loans." *Id.* at 6; *see Hyland v. Navient Corp.*, No. 18-CV-9031, 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019) (finding no conflict preemption). Here, "[p]laintiff's claims represent a situation in which . . . it is not impossible [for defendants] to comply with both" federal regulations and state law. M&O at 7; *see Minner v. Navient Corp.*, No. 18-CV-1086, 2020 WL 906628, at *10 (W.D.N.Y. Feb. 25, 2020) ("it is not impossible to comply with both statutes, nor does the requirement not to deceive stand as an obstacle to Congress's objectives in passing the HEA"); *Manchanda*, 2020 WL 5802238, at *8 (ECMC "could comply with New York state law" and the HEA); *Hyland*, 2019 WL 2918238, at *8 ("Nor are the state law claims impliedly preempted by the HEA under a conflict preemption theory."). Therefore, ECMC's motion for

---

[10] "Implied preemption renders a state law inoperative in two circumstances: (1) when the state law 'regulates conduct in a field that that Congress intended the Federal Government to occupy exclusively,' (so called 'field preemption') and (2) when the state law 'actually conflicts with federal law,' (so called 'conflict preemption')." *New York State Telecomms. Ass'n, Inc. v. James*, 101 F.4th 135, 147 n.9 (2d Cir. 2024). Here, ECMC invokes the doctrine of conflict preemption. *See* ECMC Mem. at 22.

summary judgment based on preemption is denied.

**XII. Conversion Claim**

Plaintiff alleges that defendants offset her 2019 federal tax refund, which gives rise to a claim for conversion. *See* Am. Compl. ¶¶ 66-67. ECMC and the Allied defendants argue that plaintiff's conversion claim should be dismissed because it is undisputed that defendants did not receive any money from tax refund offsets. ECMC Mem. at 20; Allied Mem. at 20-21.

"Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (internal quotation marks omitted). To state a conversion claim, a "plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Id.* (internal quotation marks omitted). The claim's "[t]wo key elements" are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* (internal quotation marks omitted).

ECMC has submitted a declaration explaining that as a "guaranty agency," it "simply certifies the borrower's liability to the United States Treasury, which then performs the actual offset and retains any funds that are offset." Klisch Decl. ¶ 9. In this case, "no funds [we]re paid to ECMC . . . , and, in fact, ECMC has not received any monies from any tax refund offsets that may have been implemented against Plaintiff." *Id.* Under the regulatory scheme, the funds are transferred between federal agencies and ECMC is notified of the transfers. *See Lima*, 947 F.3d at 1126. Since it is undisputed that ECMC did not "exercise[] an unauthorized dominion" over

plaintiff's funds, the conversion claim against ECMC cannot survive summary judgment.

Similarly, the Allied defendants did not "exercise[] an unauthorized dominion" over plaintiff's funds. It is undisputed that Allied does not own the account or Loans at issue, nor is it a judgment creditor of plaintiff. Allied 56.1 Stmt. ¶ 16. Rather, the Allied defendants were merely referred by ECMC to assist with collections on plaintiff's account. *Id.* ¶ 15. Pursuant to the federal regulatory scheme, the United States Treasury performs the actual offset and retains any funds that are offset. *See* Klisch Decl. ¶ 9; 31 U.S.C. § 3716.

In her declaration, plaintiff does not even claim that any offset actually occurred. *See generally* Sadigh Decl. Moreover, plaintiff's reliance on *Devito v. Neiman*, 548 F. Supp. 3d 314 (S.D.N.Y. 2021), is misplaced. In that case, the court denied a motion to dismiss filed by the New York City marshal, who had garnished funds from plaintiff's bank account and "transferred the money" to a collection agency. *Id.* at 318. There, the marshal, unlike the defendants here, clearly exercised dominion over the funds held in plaintiff's bank account by actually garnishing those funds. *Id.*

Accordingly, plaintiff's conversion claim is dismissed.

## Conclusion

For the reasons set forth above, defendants' motions for summary judgment are largely denied, with leave to re-file after the parties have completed discovery. *See Hill v. Marino*, No. 10-CV-5615, 2012 WL 4447623, at *3 (E.D.N.Y. Sept. 25, 2012); *Themis Cap., LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 531 (S.D.N.Y. 2012) ("The extremely limited record raises too many unanswered questions to counsel resolving the merits of this dispute without meaningful discovery."). However, the Court grants the motion for summary judgment as to the FDCPA claim (Third Claim) against ECMC, finds that the FDCPA claims

against the Allied defendants based on the March 26, 2017 and July 11, 2019 communications are barred by the statute of limitations, and grants the motions for summary judgment as to the conversion claim (Fifth Claim) against all defendants.

**SO ORDERED**

Dated: Brooklyn, New York
September 29, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge